UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-00254-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| MICHAEL S. GAINEY, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on the Defendants Michael and Christie Gainey's "Motion for Partial Judgment on the Pleadings as to Counts II and III of the Complaint and Count I of the Counterclaim." [R. 17]. For the reasons that follow, the Court **DENIES** the motion.

**I**

The United States seeks to collect Michael Gainey's unpaid federal income taxes by enforcing federal tax liens on the Georgetown, Kentucky home that Michael resides in with his wife, Christie. [R. 1 at 1]. The Government argues that Michael fraudulently conveyed this property to Christie in order to prevent the United States from foreclosing its tax liens against his interest in the real estate. [*Id.* at 5]. The Gaineys argue that Michael never possessed an interest in the property because title always belonged to Christie alone. [R. 17 at 1].

Michael Gainey has an outstanding federal income tax assessment totaling over $1.8 million dollars, corresponding to 2005, 2006, 2007, and 2009. [R. 1 at 3]. The Treasury Department notified Michael of these assessments and demanded payment. [*Id.*] The Gaineys admit that Michael is indebted to the Internal Revenue Service for the tax periods listed in the complaint. [R. 8 at 3]. The Gaineys, however, challenge whether Michael has any property interest in 101 Widgeon Court, the real property at issue in this motion.

Michael Gainey was married to Shelagh Gainey from 1995 until their divorce in 2012. [R. 8 at 12]. As such, Michael's tax liabilities accrued during his marriage to Shelagh. Their amended divorce decree requires Michael to pay Shelagh $10,000 per month. [*Id.*] Although Michael maintained their marital home in Loveland, Ohio, the mortgage lender foreclosed on that property. [*Id.*]

Christie Gainey had a previous marriage to Herman Arroyave, which lasted from 1991 to 2009. [*Id.* at 10–11]. While married, Christie and Herman purchased 101 Widgeon Court in 2005. [*Id.* at 10]. Christie and Herman's separation agreement awarded Christie 100% of the equity in 101 Widgeon Court. [*Id.* at 11]. Herman signed a quitclaim deed on December 8, 2009, transferring his interest in the property to Christie. [*Id.*]

Michael and Christie married in 2013. [*Id.* at 12]. Michael then moved into 101 Widgeon Court. [*Id.*] Michael and Christie claim that most of Michael's income goes to pay the Internal Revenue Service, Shelagh, and "other court ordered obligations." [*Id.*] On December 13, 2013, Christie borrowed $202,000 from Members Heritage Credit Union to refinance her mortgage on the property. [*Id.* at 13]. According to the Gaineys, the Credit Union required Michael to sign the December 2013 mortgage because he was Christie's spouse. [*Id.*] It is undisputed that Christie and Michael jointly signed the December 2013 mortgage. [R. 8-9].

The Government alleges that on November 10, 2014, the Internal Revenue Service recorded notices of federal tax liens against Michael. [R. 1 at 4]. About one week later, on November 17, 2014, Christie and Michael executed a quitclaim deed transferring all interest in the property to Christie Gainey. [*Id.*; *see also* R. 1-1]. The quitclaim deed lists "Christie Gainey (fka Christie Arroyave) and Michael S. Gainey, wife and husband," as the "First Party" and "Christie Gainey" as the "Second Party." [R. 1-1]. The quitclaim deed reads: "That for the desire

2

of Christie Gainey to have title to the below-described property vested in her correct name, FIRST PARTY has conveyed, transferred, set-over, and QUIT-CLAIMED unto SECOND PARTY, her heirs and assigns forever, the following real estate situated in Scott County, Kentucky[.]" [*Id.*] The Government alleges that this constituted a fraudulent transfer. [R. 1 at 4].

On July 21, 2025, the United States brought this complaint. [R. 1]. The government's three-count complaint included counts to set aside the alleged fraudulent transfer of 101 Widgeon Court (Count II) and for the foreclosure of federal tax liens pursuant to 26 U.S.C. §§ 6321 and 6322 (Count III). [R. 6]. On August 18, 2025, the Gaineys filed their answer to the complaint, admitting that Michael owes taxes to the Internal Revenue Service but denying that Michael has any property interest in 101 Widgeon Court. [R. 8]. Christie Gainey filed a counterclaim, bringing claims to quiet title in the property (Count I) and for civil damages under 26 U.S.C. §§ 7426 and 7430. [*Id.*]

On September 19, 2025, the Gaineys filed their motion for partial judgment on the pleadings as to Counts II and III of the Complaint and Count I of the Counterclaim. [R. 17]. The United States filed their Response in Opposition to the Motion on November 26, 2025. [R. 20]. The Gaineys filed their Reply brief on December 11, 2025. [R. 21]. The motion is fully briefed and ripe for adjudication.

**II**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). Under that familiar framework, the Court construes the complaint in the light most favorable to the plaintiff and accepts all of the

plaintiff's well-plead factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). A complaint survives a Rule 12(c) motion for judgment on the pleadings where it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Prudential Ins. Co. of Am. v. McFadden*, 504 F. Supp. 3d 627, 633 (E.D. Ky. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). The Court should grant the Rule 12(c) motion "if the pleadings, accepted as true, present no material issue of fact and the party making the motion is entitled to judgment as a matter of law[.]" *Id.* (citing *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)) (citation modified). In considering the motion, the Court may consider exhibits attached to the complaint, public records, and any exhibits attached to the Rule 12(c) motion without converting it into a motion for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### A

Whether Michael holds an interest in the property for the purposes of the federal tax lien statute is a question of federal law, but the answer to this federal question rests on state law. *United States v. Craft*, 535 U.S. 274, 278 (2002). The federal tax lien statute "creates no property rights but merely attached consequences, federally defined, to rights created under state law." *Id.* (citing *United States v. Bess*, 357 U.S. 51, 55 (1958)). Courts look first to state law "to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* (citing *Drye v. United States*, 528 U.S. 49, 58 (1999)). When looking to state law, federal courts must "consider the substance

4

of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Id.* at 279.

Before delving into whether Michael Gainey had an identifiable right in the property, it is necessary to briefly review the government's theory of fraudulent conveyance. The doctrine of fraudulent conveyance, or fraudulent transfer, is a simple one: a debtor may not hide their assets from a creditor by "gifting" or "moving" those assets to a friend, relative, or associate. A fraudulent transfer is "a conveyance which hinders, delays or defrauds creditors" and is "void as against the recipient unless that party received it in good faith and for consideration." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 362 (2016). The Government's argument is not complicated: Michael Gainey had some interest in 101 Widgeon Court, received notice that liens would attach to his property interests, and then quickly executed a quitclaim deed listing Christie as the sole owner of the property to avoid the liens from attaching to the home. The key question, then, is whether Michael had or has any interest in the property.

The Gaineys argue that Ky. Rev. Stat. § 382.010 defines how a person may acquire an ownership interest in real estate. [R. 17 at 9]. This statute reads: "the owner may convey any interest in real property not in the adverse possession of another; but no estate of inheritance or freehold, or for a term of more than one (1) year, in real property shall be conveyed, except by deed or will." Ky. Rev. Stat. § 382.010. The Gaineys further suggest that the mere existence of a quitclaim deed does not establish that Michael, as a grantor, owned any interest in the property before the conveyance. [R. 17 at 9]. They cite to Ky. Rev. Stat. § 381.150, which states that "a deed and warranty of land purporting to pass or assure a greater right or estate than the person can lawfully pass or assure, shall operate to convey on warrant so much of the right and estate as such person can lawfully convey." In other words, because a deed can convey no greater title

5

than that owned by the grantor, any deed quitclaimed by Michael had no effect because Michael had no pre-existing right in the property. *See York v. Perkins*, 269 S.W.2d 242, 243 (Ky. 1954) ("It is elementary that a deed can only convey title to land actually owned by grantor and the grantee takes no greater title under a deed than the grantor had.").

The United States argues that Michael's property rights extend beyond simple legal title. [R. 20 at 3]. The government notes that they allege that Michael maintains possession of the property which demonstrates that he has "some interest" in the property. [*Id.*] They also claim that Christie holds the property "as nominee or alter ego" of Michael or "in constructive trust" for Michael. [R. 1 at 5]. The government notes that Kentucky recognizes the "constructive trust" theory, which aids courts in determining "whether a titled owner merely holds the property in a constructive or fictitious trust for the true beneficial owner." *Spotts v. United States*, 429 F.3d 248, 253 (6th Cir. 2005).

Because constructive trusts are not claims in their own right, a party must assert a viable claim that could serve as the basis for imposing a constructive trust. *Bewley v. Heady*, 610 S.W.3d 352, 358 (Ky. Ct. App. 2020). Constructive trusts are an equitable "remedy associated with claims of fraud, breach of confidence, breach of fiduciary duty, or unjust enrichment." *Id.* Courts create constructive trusts "in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Id.* (quoting *Hull v. Simon*, 128 S.W.2d 954, 958 (Ky. 1939)). A court may impose a constructive trust "where title is taken under circumstances of circumvention or imposition." *Id.* (quoting *Middleton v. Beasley*, 216 S.W. 591, 592 (Ky. 1919)). Kentucky's appellate courts have upheld findings of a constructive trust where parties collaborated to avoid execution of a judgment or collection of a debt, finding such behavior "unconscientious" and

6

constituting "circumstances of circumvention." *Keeney v. Keeney*, 223 S.W.3d 843, 850 (Ct. App. Ky. 2007).

**B**

The Court turns now to the circumstances of this case by presuming that all of the Government's well-pleaded facts are true. *Kottmyer*, 436 F.3d at 688. First, the Court accepts as true that Christie *and* Michael both signed the December 13, 2013, mortgage defining "borrowers" as both Christie and Michael who are "mortgagor[s] under this instrument." [R. 8-9]. "A mortgage is a mere security for debt," and "the mortgagor is the real owner of the property mortgaged." *Hernandez v. County Investments, LLC*, 696 S.W.3d 832, 836 (Ky. Ct. App. 2024) (citing *Grafton v. Shields Mini Markets, Inc.*, 346 S.W.3d 306, 310 (Ky. Ct. App. 2011)). As plead, the United States alleges that Michael had some interest in the property as a mortgagor as of December 13, 2013, which the Court must accept as true at this stage. The Court also accepts as true that the IRS recorded notices of federal tax liens on November 17, 2024, and that on or about November 17, 2024, the Gaineys executed a quitclaim deed transferring 101 Widgeon Court from Christie and Michael, as "First Party," to Christie alone, as "Second Party."

The Court must draw all reasonable inferences in favor of the United States. *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015). Doing so, the execution of the November 2024 quitclaim deed suggests that Michael transferred his interest in 101 Widgeon Court in an effort to prevent the attachment of the tax liens to the property. The Gaineys claim the purpose of the quitclaim deed was solely accomplish the goal of titling the property in Christie's new name, Christie Gainey. The language of the quitclaim deed reflects this purpose. *See* [R. 1-1 at 1]. But the United States is entitled to the reasonable inference that the actual purpose was to

7

fraudulently convey the property to Christie alone in order to avoid Michael's tax liens, notwithstanding the Gaineys' alternative theory.

Next, the Court evaluates whether this factual matter, accepted as true, states a claim to relief that is plausible on its face. *McFadden*, 504 F. Supp. 3d at 633. The parties do not dispute that Michael Gainey owes the United States income taxes and penalties. Taking as true the government's facts and drawing all reasonable inferences in their favor, the United States has clearly articulated a theory of fraudulent transfer. Kentucky's Uniform Voidable Transaction Act, Ky. Rev. Stat. § 378A.005 *et seq.*, lists several factors to consider when considering voiding a fraudulent transfer, including whether "the transfer was to an insider," whether "the debtor retained possession or control of the property transferred after the transfer," and whether "the transfer occurred shortly before or shortly after a substantial debt was incurred," among others. Ky. Rev. Stat. § 378A.040(2).[1] The Government sufficiently alleges that these factors exist. Under their theory, the property changed hands from Michael and Christie jointly to Christie, his wife; Michael continues to live in, possess, and otherwise exercise control over the property; and the transfer happened within days of the IRS tax lien notices. [R. 1 at 4].

The Court may only grant a Rule 12(c) motion if the "if the pleadings, accepted as true, present no material issue of fact." *McFadden*, 504 F. Supp. 3d at 633. In their answer, the Gaineys denied that Michael "enjoys the benefits of ownership" of the home, including denying that he maintains control or possession of the property, [R. 8 at 6], despite also admitting that "Michael Gainey began living in the Real Property and treating the Real Property as his personal residence." [*Id.* at 4; R. 1 at 4]. The parties dispute whether Michael has an interest in the property and dispute whether the Gaineys executed the November 2014 quitclaim deed with the

---

[1] Kentucky's Uniform Voidable Transactions Act defines an "insider" to include "a relative of the debtor" if the debtor is an individual. Ky. Rev. Stat. § 378A.010(8)(a)(1).

8

intention to hinder, delay, or defraud the United States. [*Id.* at 6]. At this stage, therefore, there are several disputes as to material facts, rendering inappropriate any grant of a Rule 12(c) motion. *See, e.g., Grayiel v. AIO Holdings, Inc.*, 452 F. Supp. 3d 600, 629 (W.D. Ky. 2020) (denying in part a summary judgment motion because genuine disputes as to material facts existed regarding the existence of fraudulent conveyance factors under Kentucky law).

As a final matter, the Gaineys argue that the United States has not met its burden under Rule 9(b), requiring that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); [R. 21 at 6]. But Rule 9 does not "reintroduce formalities to pleading." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016). In the context of a fraudulent conveyance claim, "Rule 9(b)'s particularity standard 'may be relaxed where information is only within the opposing party's knowledge.'" *Scott Eisenberg of CRS Capstone Partners, LLC v. Alterna Cap. Sols., LLC*, No. 22-CV-11744, 2023 WL 348334, at *5 (E.D. Mich. Jan. 20, 2023) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)). The Sixth Circuit has not addressed whether and to what extend Rule 9(b) applies to fraudulent conveyance claims. *Id.* at *4 n.2; *see also In re NM Holdings Co., LLC*, 407 B.R. 232, 258–59 (E.D. Mich. 2009) ("The Sixth Circuit has not yet addressed whether the particularity requirement of Rule 9(b) applies to fraudulent transfer claims").

But even assuming *in arguendo* that Rule 9(b) applies, the Government has still met its burden. The Sixth Circuit construes the Rule 9(b) pleading requirement liberally, requiring the plaintiff to specify "the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). The Complaint alleges that

9

Michael Gainey (the "who"), after receiving notice of the IRS federal tax liens, executed a quitclaim deed transferring his interest in the Real Property to Christie (the "what") on November 17, 2014 (the "when"). [R. 1 at 4]. This occurred in Scott County, Kentucky (the "where") and resulted in a fraudulent transfer to shield 101 Widgeon Court from the federal tax liens (the "how"). [*Id.* at 1, 4]. This satisfies the Rule 9(b) standard.

This action raises several questions. Does Michael Gainey maintain a property interest in 101 Widgeon Court? Did he ever have one to begin with? May the United States attach federal tax liens to that property? Did Michael and Christie engage in a fraudulent conveyance to prevent that from happening? This Memorandum Opinion does not address these questions. Instead, the Court faced two simpler inquiries. First, did the Government's complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face? Second, did the pleadings present material issues of fact, precluding the grant of the Gainey's Rule 12(c) motion? Because the answer to both of these questions is "Yes," the Court denies the Gainey defendants' Motion for Partial Judgment on the Pleadings.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants Michael Gainey and Christie Gainey's Motion for Partial Judgment on the Pleadings **[R. 17]** is **DENIED**.

2. All defendants having otherwise answered or defaulted, an Order for Meeting and Report will be entered contemporaneously herewith.

This 18th day of May, 2026.

Gregory F. Van Tatenhove
United States District Judge